ORIGINAL

FILED

MAY 1 0 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1 **STUEVE SIEGEL HANSON LLP**
Jason S. Hartley (SBN No. 192514)
2 Jason M. Lindner (SBN No. 211451)
550 West C Street, Suite 610
3 San Diego, California 92101
Phone: (619) 400-5822
4 Fax: (619) 400-5832
hartley@stuevesiegel.com
5 lindner@stuevesiegel.com

6
**STUEVE SIEGEL HANSON LLP**
7 Patrick J. Stueve (MO Bar #37682)
(*pro hac vice forthcoming*)
8 Bradley T. Wilders (MO Bar #60444)
(*pro hac vice forthcoming*)
9 460 Nichols Road, Suite 200
Kansas City, MO 64112
10 Phone: (816) 714-7100
Fax: (816) 714-7101
11 stueve@stuevesiegel.com
wilders@stuevesiegel.com

12
*Attorneys for Plaintiff and the Class*
13

14
**UNITED STATES DISTRICT COURT**
15
**NORTHERN DISTRICT OF CALIFORNIA**
16

17 CHRISTOPHER J. LEISZLER, DDS,    Case No.
on behalf of himself and all others
18 similarly situated,    **CLASS ACTION COMPLAINT**

19    Plaintiff,

20    v.    **DEMAND FOR JURY TRIAL**

21
ALIGN TECHNOLOGY, INC., a
22 California Corporation,

23    Defendant.

24

25

26

27

28

157563

1    Plaintiff Christopher J. Leiszler, DDS (hereinafter "Plaintiff") on behalf of

2  himself and the proposed Class defined herein, alleges as follows:

3                          **JURISDICTION AND VENUE**

4    1.    This Court has jurisdiction under 28 U.S.C. § 1332. The aggregated

5  claims of the individual class members exceed the sum or value of $5,000,000 and

6  more than two-thirds of the members of proposed Class and the Defendant are

7  citizens of different states.

8    2.    Venue is proper in this District under 28 U.S.C. §§ 1391 (a) and (c). A

9  substantial part of the events and conduct giving rise to the violations of law alleged

10  herein occurred in this District; Align Technology, Inc. ("Align") has its principal

11  place of business in this district; and Align conducts substantial business within this

12  District.

13                          **NATURE OF THE CASE**

14    3.    This case is about the implementation of unfair and fraudulent

15  requirements for the prescription of a medical orthodontic device, called Invisalign,

16  on its prescribing doctors. In order to be permitted to prescribe Invisalign, its

17  manufacturer, Align, required doctors to pay approximately $2,000 for a training

18  course. After Plaintiff and the Class paid for and completed the required course,

19  Align implemented a quota system of at least 10 new Invisalign cases per year from

20  each prescribing doctor. Failure to meet this quota resulted in Plaintiff's and the

21  Class' suspension or termination of their right to initiate new cases of Invisalign.

22  Align's new quota system was called a "Proficiency Requirement" (hereinafter

23  "Quota Requirement.")

24    4.    Align's practices violate the public policy of the State of California, as

25  the sole purpose of Align's Quota Requirement is to increase doctor prescribed sales

26  of Invisalign. The necessary and intended effect of Align's actions was to coerce

27  doctors, under the threat of decertification, into prescribing Invisalign even where it

28  was not necessary and/or where it was not the safest or most effective course of

157563                                    1
                          CLASS ACTION COMPLAINT

1 treatment. In effect, Align offered doctors an all or nothing deal: prescribe
2 Invisalign to at least ten patients a year, regardless of whether it was necessary, safe
3 or the most effective treatment or do not prescribe Invisalign at all. Consequently,
4 through its Quota Requirement, Align used its market power to interfere with the
5 decisions, policies and practices of doctors to violate their duty to act consistent with
6 that degree of learning and skill ordinarily possessed by reputable licensed and
7 certified dentists and orthodontists and practicing according to the applicable legal
8 standard of care. Doctors, like Plaintiff, who refused to surrender to Align's
9 demands were decertified by Align. Align, therefore, terminated its contractual
10 relationship with or otherwise penalized doctors who failed to accept its Quota
11 Requirement in violation of the public policy of the State of California.

12      5.      Plaintiff and the Class seek a refund of the price paid to Align for
13 training to prescribe Invisalign, which training was rendered valueless by Align's
14 subsequently implemented minimum quota.

15      6.      As a result of Align's practices, Plaintiff and the Class suffered injury
16 in fact and lost money or property, including economic damages. Plaintiff, on behalf
17 of himself and all others similarly situated, brings claims for statutory violations of
18 the Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), and for
19 unjust enrichment.

20                          **PARTIES**

21      7.      Plaintiff Christopher J. Leiszler, DDS is a resident of Baldwin City,
22 Kansas. Dr. Leiszler is a doctor of dental science (DDS) and practices family
23 dentistry in Baldwin City, Kansas. He was an authorized prescriber of Invisalign.

24      8.      Defendant Align is a corporation organized and existing under the
25 laws of the State of California and has its principal place of business in Santa Clara,
26 California.

27      9.      At all relevant times, Align was engaged in the business of designing,
28 developing, manufacturing, marketing and selling throughout the United States and

157563                          2

1  the world clear removable orthodontic aligners that are used to straighten teeth.
2  Align also manages, controls, and provides both initial training and instruction for
3  the prescription of Invisalign and continuing education courses for prescribing
4  doctors.

5       10.    Align has trained more than 58,000 doctors around the world and has
6  started more than 1 million individual patient Invisalign cases. Since the
7  announcement of its Quota Requirement, Align saw its revenues jump an astounding
8  29% in less than a year. Align generated $312.3 million in revenue in 2009.

9  <div align="center">**FACTUAL ALLEGATIONS**</div>

10       11.    Align sells clear, removable orthodontic treatment for teenagers and
11  adults, marketed under the brand name "Invisalign." The treatment consists of a
12  number of different clear plastic molded pieces that over time slowly straighten teeth
13  with each application. Invisalign can be prescribed by both orthodontists and
14  dentists. In order to be qualified to prescribe Invisalign, Align requires completion
15  of its eight-hour training course, which costs approximately $2,000 paid directly to
16  Align. The initial, required training course is called "Clear Essentials 1" for dentists
17  and "Clear Principles" for orthodontists. Before June 1, 2009, any qualified doctor
18  who successfully completed Align's training course was permitted to prescribe new
19  cases of Invisalign.

20       12.    The sole motivation for doctors paying for and taking the Invisalign
21  training course was to be able to prescribe Invisalign in their practice. The training
22  has no value whatsoever except in the prescription and management of Invisalign
23  treatment.

24       13.    At no time before Plaintiff and the Class paid for the training course
25  and became certified and approved prescribers of Invisalign did Align advise
26  Plaintiff or the Class that any kind of quantitative requirement or quota system
27  would be implemented in order to continue prescribing Invisalign.

28

<div align="center">3</div>
<div align="center">CLASS ACTION COMPLAINT</div>

1    14.    On or about June 2, 2009, Align announced that beginning June 1,
2  2009, a so-called "Proficiency Program" would be implemented that places a
3  quantitative requirement on all Invisalign prescribing doctors. Regardless of any
4  actual doctor proficiency, such as success rates, favorable patient reviews, past
5  experience or training, the "Proficiency Program" simply required any doctor
6  wishing to continue using Invisalign to prescribe a *minimum* of 10 new cases of
7  Invisalign each calendar year. Failure to complete the quota of new cases resulted in
8  suspension of the doctor's Invisalign account or "Limited Account Status", which
9  prevented the start of any new cases for Invisalign.

10    15.    Align acknowledged that the Invisalign proficiency requirements were
11  not based on a clinical review of actual oral health care outcomes. In fact, Align
12  stated it had no way of assessing qualitative results given the lack of objective
13  standards for orthodontic outcomes. Align further stated that it had not performed
14  any qualitative comparison of the clinical treatment outcomes of high volume and
15  low volume Invisalign providers.

16    16.    Moreover, and directly relevant to Plaintiff's claims asserted here,
17  Align stated that "no allowances for individual circumstances or grandfathering will
18  be made." Consequently, Plaintiff and the Class of perfectly capable, formally
19  trained and accredited doctors who paid for training and the right to prescribe
20  Invisalign were denied the benefit of their cash and time outlay to become qualified
21  to prescribe Invisalign.

22    17.    The sole purpose of the Quota Requirement was to increase Align's
23  financial bottom line, regardless of the patient's well being or the promises made to
24  Plaintiff and the Class.

25    18.    The Academy of General Dentistry ("AGD") opened an investigation
26  and raised many of the concerns its members had about the new quota requirement
27  directly with Align. Vincent Mayher, Jr., DMD, MAGD, immediate past president
28  of the AGD stated, "We have spoken with Align executives and they have not

157563                                              4

1  provided anything to support the claim that the dentist who does 9 patient cases is
2  zero percent proficient while the dentist who gets the 10th patient walking through
3  the door becomes one hundred percent proficient."

4      19.   The American Dental Association ("ADA") also submitted an inquiry
5  to Align on behalf of its dentist members, who uniformly opposed the Quota
6  Requirement. In response to an ADA question, Align acknowledged that the Quota
7  Requirement was not the same as a standard for the clinical proficiency of the
8  provider. Align confirmed that "no allowances for individual circumstances or
9  grandfathering will be made."

10     20.   The true purpose of the Quota Requirement was to increase profit and
11 revenues for Align. The Quota Requirement had its intended effect of dramatically
12 increasing profit and revenues for Align.

13     21.   The Quota Requirement stopped a downward trend in both Align
14 revenues and new cases. For example, new Invisalign cases fell almost 10% from
15 the second quarter of 2008 to the first quarter of 2009. But after the announcement
16 of the Quota Requirement, the number of cases of Invisalign shipped increased 27%
17 from the first quarter of 2009 to the first quarter of 2010. Revenue during that same
18 period increased 29%.

19     22.   The new requirements were a boon to Align, which stated it was "very
20 pleased" with the results of the requirements. After only four months, continuing
21 education course completions rose "significantly" and "practices across the country
22 [were] working with Territory Managers to meet or surpass the minimum [new case]
23 requirements by years'-end."

24     23.   Sure enough, in a presentation to investors in 2009, Align stated,
25 "[s]equential case growth was driven by doctors that were midway to just under 10
26 cases…" Align went on to note, "[r]esults to-date are consistent with modeling
27 described in Q2 09 call – Vast majority of doctors in the (7 to 9) group move to 10

28

1  or more cases – Percentage of doctors in the (4 to 6) group move to 10 or more
2  cases."

3    24.    Align did, however, provide that Plaintiff and the Class "can reactivate
4  their account and start submitting cases by completing a Clear essentials 1 (GPs) or
5  Clear Principles 1 (orthodontists) training course [at approximately $2,000]. After
6  completing the training course, doctors need to meet the annual proficiency
7  requirements." Thus, despite previous training and authorization to prescribe
8  Invisalign, Align required an additional fee to reinstate an account that was
9  deactivated for failure to meet the Quota Requirement....a requirement Align itself
10 admitted was in no way tied to a doctor's ability or actual proficiency with
11 Invisalign.

12    25.    In an announcement to doctors, Align stated "[d]octors whose
13 customer accounts were deactivated or changed to limited status for failing to meet
14 the 2009 proficiency requirements can reactivate their account and start using
15 Invisalign again at any time *by completing a Clear Essentials 1 or Clear Principles*
16 *training course [at a cost of approximately $2,000]* and thereafter meeting the
17 annual ten CE hour requirement…"

18    26.    Align itself bragged about the effect the Quota Requirement had on its
19 bottom line, even though it potentially interfered with the exercise of doctors'
20 professional judgment regarding the best treatment for their patients and denied
21 Plaintiff and the class the benefits of their Invisalign training.

22    27.    While the Quota Requirement had the effect of increasing revenues by
23 forcing doctors to prescribe Invisalign to more patients, it also dramatically reduced
24 the number of doctors eligible to prescribe Invisalign. By early 2010, tens of
25 thousands of doctors in the United States had paid for training to prescribe Invisalign
26 but were not "active" or, in other words, were not eligible to prescribe Invisalign.

27
28

157563                                  6

1    28.    In another chart presented to investors entitled "Proficiency
2  Requirements Status Entering 2010" Align noted that 23,000 doctors had their
3  privileges to start new Invisalign cases revoked for failure to meet the requirements.

4    29.    Only after the scheme significantly boosted sales, and all but forced its
5  customers to zealously promote Invisalign to patients resulting in tens of thousands
6  of new cases, Align finally withdrew its Quota Requirement quota requirement on or
7  about April 22, 2010.

8                         **Plaintiff's Experience**

9    30.    Plaintiff, Dr. Christopher Leiszler, DDS paid for and completed
10  Align's "Invisalign Clear Essentials 1" training course in 2008 and was a certified
11  prescriber of Invisalign. He paid for and attended the training for the sole purpose of
12  becoming an eligible prescriber of Invisalign.

13    31.    While he was a certified prescriber of Invisalign he started at least one
14  new patient case for Invisalign.

15    32.    Dr. Leiszler did not meet the "Proficiency Requirements" quota in
16  2009. As a result, his Invisalign privileges were suspended and his account was
17  changed to "Limited Account" status, which prevented him from initiating any new
18  Invisalign cases.

19    33.    Consequently, Dr. Leiszler was permitted to start only a single
20  Invisalign case before his privileges were suspended.

21    34.    Notwithstanding Align's retraction of its Quota Requirement, because
22  Dr. Leiszler's account was suspended as a result of his failure to satisfy the Quota
23  Requirement, he is now required to pay approximately $2,000 again and retake the
24  Invisalign training course in order to be eligible to prescribe Invisalign.

25                    **CLASS ACTION ALLEGATIONS**

26    35.    Plaintiff brings this action on behalf of himself and all other similarly
27  situated people. Plaintiff seeks to represent a Class initially defined as follows:

28

157563                          7

1  |  All persons who completed either Clear Essentials 1 or Clear Principles
2  |  training through Invisalign and whose accounts were deactivated or
   |  suspended as a result of Align's Quota Requirement

36.   Excluded from the Class are Align; any affiliate, parent, or subsidiary of Align; any entity in which Align has a controlling interest; any officer, director, or employee of Align; any successor or assign of Align; anyone employed by counsel for Plaintiff in this action; and any Judge to whom this case is assigned as well as his or her immediate family and staff.

37.   This action is brought and may properly be maintained on behalf of the Class proposed above under the criteria of Federal Rule of Civil Procedure Rule 23.

38.   **Numerosity.** Members of the Class are so numerous that their individual joinder herein is impracticable. Thousands of doctors paid Align for the privilege of prescribing Invisalign only to have their accounts rendered inactive by virtue of Align's later-implemented Quota Requirement. Although the exact number of Class members and their addresses are unknown to Plaintiffs, they are readily ascertainable from Align's records. Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

39.   **Existence and predominance of common questions.** Common questions of law and fact exist as to Plaintiff and all members of the Class and predominate over questions affecting only individual Class members. These common questions include:

(a)   Whether Align received approximately $2,000 for Invisalign training from Plaintiff and the Class;

(b)   Whether Align implemented a Quota Requirement that applied a minimum Invisalign quota on Plaintiff and the Class;

(c)   Whether Plaintiff and the Class were, at one point, authorized by Align to prescribe Invisalign;

1       (d)     Whether Plaintiff and the Class had their Align accounts

2               changed from Active status, such that they were unauthorized to

3               prescribe Invisalign;

4       (e)     Whether Plaintiff and the Class are entitled to a refund of the

5               cost of Invisalign training;

6       (f)     Whether Align engaged in unfair, or fraudulent business

7               practices in violation of the UCL;

8       (g)     Whether Plaintiff and the Class are entitled to equitable relief,

9               including but not limited to restitution or injunctive relief; and

10      (h)     Whether Plaintiff and the Class are entitled to damages and

11              other monetary relief and, if so, in what amount.

12      40.     **Typicality.** Plaintiff's claims are typical of the claims of the Class

13 because, among other things, Plaintiff paid for and completed Invisalign training and

14 was subsequently restricted from prescribing Invisalign as a result of failure to

15 satisfy the Quota Requirement requirements.

16      41.     **Adequacy.** Plaintiff is an adequate representative of the Class because

17 his interests do not conflict with the interests of the members of the Class he seeks to

18 represent. Plaintiff retained counsel competent and experienced in complex class

19 action litigation, and Plaintiff intends to prosecute this action vigorously. The

20 interests of members of the Class will be fairly and adequately protected by Plaintiff

21 and his counsel.

22      42.     **Superiority.** The class action is superior to other available means for

23 the fair and efficient adjudication of the claims of Plaintiff and the Class. The

24 damages suffered by each individual Class member may be limited. Damages of

25 such magnitude are small given the burden and expense of individual prosecution of

26 the complex and extensive litigation necessitated by Defendant's conduct. Further,

27 it would be virtually impossible for the members of the Class to individually redress

28 effectively the wrongs done to them. Even if the members of the Class themselves

157563                          9

1 could afford such individual litigation, the court system could not. Individualized

2 litigation presents a potential for inconsistent or contradictory judgments.

3 Individualized litigation increases the delay and expense to all parties and the court

4 system presented by the complex legal and factual issues of the case. By contrast,

5 the class action device presents far fewer management difficulties, and provides the

6 benefits of single adjudication, economy of scale, and comprehensive supervision by

7 a single court.

8          43.       In the alternative, the Class may be certified because:

9                    (a)    the prosecution of separate actions by the individual members of

10                          the Class would create a risk of inconsistent or varying

11                          adjudication with respect to individual Class members which

12                          would establish incompatible standards of conduct for Align;

13                   (b)    the prosecution of separate actions by individual Class members

14                          would create a risk of adjudications with respect to them which

15                          would, as a practical matter, be dispositive of the interests of

16                          other Class members not parties to the adjudications, or

17                          substantially impair or impede their ability to protect their

18                          interests; and

19                   (c)    Align has acted or refused to act on grounds generally

20                          applicable to the class, thereby making appropriate final and

21                          injunctive relief with respect to the members of the Class as a

22                          whole.

23

24

25

26

27

28

157563                                        10
                                CLASS ACTION COMPLAINT

1

## FIRST CAUSE OF ACTION

2

### (For Unfair And/Or Fraudulent Business Practices, California Business And

3

### Professions Code Section 17200 *et seq.*)

4      44.    On behalf of himself and Class members, Plaintiff incorporates by

5    reference and realleges all paragraphs previously alleged herein and further alleges

6    as follows.

7      45.    Align's practices as alleged in this complaint constitute unfair and

8    fraudulent business practices under the UCL, Bus. & Prof. Code §§ 17200 et seq.

9      46.    Plaintiff and the Class reasonably relied on the representations of

10   Align that once they paid for and attended Align's training courses, they would be

11   eligible to prescribe Invisalign free from any minimum annual quota requirement. In

12   the alternative, Align's failure to advise Plaintiff and the Class of the minimum

13   annual quota before they paid for and attended training was a material omission by

14   Align, which would have affected the parties' conduct.

15     47.    Align committed unfair business practices by:

16            (a)    Engaging in conduct where the utility of such conduct, if any, is

17   outweighed by the gravity of the consequences to Plaintiff and the other Class

18   members.

19            (b)    Engaging in conduct that is immoral, unethical, oppressive,

20   unscrupulous, or substantially injurious to Plaintiff and the other Class members;

21   and

22            (c)    Engaging in conduct that undermines or violates the stated

23   policies underlying the UCL, which seeks to protect consumers against unfair

24   business practices and to promote a basic level of honesty and reliability in the

25   marketplace, and thus provide a sufficient predicate for Plaintiff's claims for unfair

26   business practices.

27

28

157563                                11

Case3:10-cv-02010-EDL Document1 Filed05/10/10 Page13 of 15

1    48.    Align committed fraudulent business practices by engaging in conduct
2    that was and is likely to deceive Plaintiff and the Class acting reasonably under the
3    circumstances. Align's fraudulent practices include but are not limited to:

4         (a)   Charging Plaintiff and the Class approximately $2,000 for
5               training in order to prescribe Invisalign, without advising them
6               of a minimum annual quota requirement for new Invisalign
7               cases;
8         (b)   Withdrawing, suspending or otherwise rendering inactive
9               Plaintiff's and the Class's accounts with Align such that they
10              were prevented from prescribing Invisalign;
11        (c)   Imposing additional onerous, unethical and unfair rules
12              regarding the ability to prescribe Invisalign only after receiving
13              approximately $2,000 from Plaintiff and the Class for the right
14              to so prescribe;
15        (d)   Attempting to interfere with the professional medical judgment
16              of Plaintiff and the Class by incentivizing doctors to over-
17              prescribe Invisalign in order to remain Active Invisalign doctors.
18   49.    Plaintiff and the Class suffered injury in fact and lost money and
19   property as a result of Align's unfair or fraudulent practices, in that, among other
20   things:

21        (a)   Class members would not have paid Align for Invisalign
22              training if they knew that there was a minimum annual quota
23              requirement of 10 new cases a year and additional onerous
24              continuing education requirements;
25        (b)   Class members paid for training and the right to prescribe
26              Invisalign, which right was unlawfully revoked by Align
27              without reimbursement for the cost of training improperly
28              withheld by Align.

157563                        12
                    CLASS ACTION COMPLAINT

50. Plaintiff, on behalf of himself and the Class, seeks declaratory and injunctive relief, restitution, disgorgement of all monies obtained from the unfair competition alleged herein, attorneys' fees, costs of suit, and other relief as appropriate.

**<u>SECOND CAUSE OF ACTION</u>**

**(For Unjust Enrichment)**

64. On behalf of himself and Class members, Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein and further alleges as follows:

65. Plaintiff and the Class conferred a benefit upon Align by paying Align for the right to prescribe and manage new cases of Invisalign.

66. Align had an appreciation and knowledge of the benefit conferred by Plaintiff and the Class.

67. Align accepted and retained the benefit under such circumstances as to make it inequitable for Align to retain the benefit of the payment for the right to prescribe Invisalign after unilaterally and unfairly withdrawing that right from Plaintiff and the Class.

51. Plaintiff, on behalf of himself and the Class, seeks restitution and damages to the full extent permitted by the law of unjust enrichment, attorneys' fees, costs of suit, and other relief as appropriate.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff requests of this Court the following relief, on behalf of himself and Class members:

1. For an order certifying the proposed Class and appointing Plaintiff and his counsel to represent both;

2. Restitution and all other forms of equitable monetary relief;

3. All other compensable and punitive damages permitted by law;

1      4.      Injunctive relief reinstating the Class as certified and approved

2  Invisalign prescribers capable of starting new cases;

3      5.      Attorneys' fees and costs of suit, including expert-witness

4              fees;

5      6.      Pre-judgment interest;

6      7.      Such other relief as the Court may deem proper.

7                    **DEMAND FOR JURY TRIAL**

8          Plaintiffs hereby demand a trial by jury on all claims so triable.

9

10  DATED:  May 7, 2010                    Respectfully submitted,

11                                   By: _____

12                                   **STUEVE SIEGEL HANSON LLP**
                                     Jason S. Hartley (SBN No. 192514)
13                                   Jason M. Lindner (SBN No. 211451)
                                     550 West C Street, Suite 610
14                                   San Diego, California 92101
                                     Phone: (619) 400-5822
15                                   Fax:  (619) 400-5832

16                                   **STUEVE SIEGEL HANSON LLP**
17                                   Patrick J. Stueve
                                     Bradley Wilders
18                                   460 Nichols Road, Suite 200
                                     Kansas City, MO 64112
19                                   Phone:  (816) 714-7100
                                     Fax:  (816) 714-7101
20                                   *Attorneys for Plaintiff*

21

22

23

24

25

26

27

28